IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD A. STEARNEY SR. and )
RONALD A. STEARNEY JR., )
)
      Plaintiffs, )
)
vs. ) Case No. 06 C 6811
)
TERRY HARMAN, JESSICA HALE, )
AWAKENINGS COMMUNITY SERVS., )
INC., and AWAKENINGS, LLC, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ronald A. Stearney Sr. and Ronald A. Stearney Jr., two Illinois lawyers in practice together, have sued Terry Harman, Jessica Hale, and two entities, Awakenings Community Services, Inc. and Awakenings LLC.[1] The Stearneys allege that the defendants intentionally interfered with the Stearneys' relationship with certain clients. The defendants, who are citizens and residents of Indiana, have moved to dismiss the complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).

For the following reasons, the Court denies defendants' motion.

## Facts

On December 8, 2005, a Southwest Airlines plane skidded off a runway at

---

[1] When the case was transferred to this Court's docket, the citizenship of the parties was unclear. Recent filings establish that the plaintiffs are all Illinois citizens and that the defendants are all Indiana citizens.

Chicago's Midway Airport and collided with a vehicle occupied by Leroy and Lisa Woods and their children Joshua, Jacob, and Matthew. Joshua Woods was killed, and the other family members were injured.

On December 12, 2005, Mr. and Mrs. Woods retained the Stearneys, whose law offices are located in Chicago, to represent them in possible litigation against Southwest and Boeing, the plane's manufacturer. On February 6 - 7, 2006, the Stearneys received two phone messages from Mr. Woods to the effect that the Woods family was terminating the Stearneys' services. The Woods family retained Indiana attorney Donald A. Schlyer to represent them in place of the Stearneys.

The defendants in this case were, at the time, providing counseling services to the Woods family. The Stearneys claim that the defendants induced Mr. and Mrs. Woods to terminate their attorney-client relationship with the Stearney firm and hire Schlyer. According to the Stearneys, the defendants were motivated to induce the Woods family to terminate their relationship with the Stearneys because they had made it clear they would not use the defendants as experts in the case. They allege that in December 2005, after the Woods family hired the Stearneys, defendant Harman contacted the firm to advise that he and other personnel at Awakenings were treating the Woods family and wanted to remain as their primary treating mental health professionals. The Stearneys alleges that Harman's purpose was to position himself and others at Awakenings to play a role as experts in any potential litigation arising from the collision with the Southwest plane. In an affidavit, Harman denies that he had any intention or made any effort to be retained as an expert. He says that he contacted the Stearneys simply to introduce himself and that he had no actual communication with

them other than a single introductory e-mail that he says was automatically returned to him by the Stearneys' e-mail service.

The Stearneys allege that in late January 2006, Mr. Woods was hospitalized in Gary, Indiana for issues related to substance abuse and was placed in an inpatient rehabilitation program with the assistance of plaintiff Ronald Stearney Jr. The Stearneys argue that the defendants took advantage of Mr. Woods' fragile state to influence him to terminate the Stearneys as the family's legal counsel. In early February 2006, the Stearneys allege, defendant Hale induced Mr. Woods to leave the rehabilitation program and transfer to Awakenings (an entity owned by Harman), against the advice of his treating doctor. The same day, the Stearneys allege, Mr. Woods telephoned the Stearney firm and advised he was terminating the firm's services. They allege that Harman and Hale arranged for Mr. and Mrs. Woods to meet with Schlyer, an Indiana attorney with whom Harman had a previous professional relationship, and that they retained Schlyer to replace the Stearney firm a few days later. In early April 2006, Schlyer, along with Chicago co-counsel, filed suit in the Circuit Court of Cook County against Southwest and Boeing. In his affidavit, Harman does not deny the Stearneys' allegation that the defendants referred the Woods family to attorney Schlyer with an eye to supplanting the Stearney firm.

## Discussion

The defendants, who are citizens and residents of Indiana, argue that this Court lacks personal jurisdiction over them. They contend they have no significant contacts with the State of Illinois and that, as a result, due process does not permit an Illinois court to assert jurisdiction over them.

3

When personal jurisdiction is challenged, the plaintiff bears the burden of establishing *prima facie* that the Court may exercise jurisdiction over the defendant. *Purdue Research Found. v. Sanofi-Synthelablo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Allegations in the plaintiff's complaint are taken as true except to the extent they are controverted by affidavits or other evidence submitted by the defendant. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Any conflicts in the evidence are resolved in favor of the exercise of jurisdiction. *Purdue Research*, 338 F.3d at 782.

The victim of a tort may choose to bring a suit in any forum with which the defendant has certain minimum contacts "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The crucial inquiry is whether the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)).

Personal jurisdiction cannot be based on fortuitous or incidental contacts with the forum state but rather must be premised on contacts that demonstrate a real relationship with that state. *Purdue Research*, 338 F.3d at 780. The defendant must retain some ability to structure its activities so that he can reasonably anticipate the jurisdictions in which he will be required to answer for his conduct. *Id*. But when a defendant's allegedly tortious actions are directed at the forum state, a court in that state may assert jurisdiction over the defendant in a suit arising from those actions. *Calder v. Jones*, 465 U.S. 783 (1984). If a defendant's actions were directed at the

4

forum state, the fact that he did not enter that state is not of critical importance in determining personal jurisdiction. *Id.* at 788-89; *see also, Purdue Research*, 338 F.3d at 781.

The Supreme Court's decision in *Calder v. Jones* supports the exercise of personal jurisdiction over each of the defendants in the present case. In *Calder*, a writer and editor from Florida published an article in the *National Enquirer* about the plaintiff, a professional entertainer who lived in California. The plaintiff contended she had been libeled via which was circulated in California. The defendants asserted they could not control whether the article would be distributed in California and that it was unreasonable for two Florida residents to be expected to defend a case in California. The Court found, however, that because the plaintiff lived in California, that state was the focal point of both the article and the harm the plaintiff claimed to have suffered. *Id*. at 789. The Court concluded "that a valid basis for jurisdiction existed on the theory that petitioners intended to, and did, cause tortious injury to the respondent in California." *Id*. at 787.

The same analysis supports the exercise of personal jurisdiction over the defendants in the present case. Though they are Indiana residents and are claimed to have acted largely, and perhaps entirely, within the boundaries of that state, their alleged interference with the Stearneys' relationship with the Woods family was directed to, and its effects were felt in, the state of Illinois. As the Court has noted, defendants have not controverted the Stearneys' allegation that they referred the Woods family to attorney Schlyer with an eye to supplanting the Stearney firm. It appears to be

undisputed on the present record that the defendants knew the Stearneys were Illinois lawyers, and it is reasonable to assume that they understood that the collision with the Southwest plane had taken place in Chicago. For those reasons, a reasonable inference may be drawn that the defendants understood that the Stearneys intended to file suit on the Woods family's behalf in Illinois. And finally, because the Stearney – Woods relationship was centered in Illinois, the disruption of that relationship caused the Stearneys injury only in Illinois.

In short, though the defendants were located in Indiana and are claimed to have carried out the alleged interfering acts in that state, they reasonably could have anticipated being sued in Illinois if they improperly interfered with the Woods – Stearney relationship. Similarly, the critical facts in *Calder* were that the out-of-state defendants had aimed their actions at a person in the forum state and that the harm was felt in that state. As the Supreme Court concluded in *Calder*, the defendants could reasonably anticipate being haled into court in the state to which they are claimed to have directed their allegedly tortious conduct and in which the injury was felt. *Calder*, 465 U.S. at 789.

Defendants argue that Harman's single e-mail to the Stearney firm is inadequate to establish the requisite minimum contacts with Illinois. The Court need not determine that question; what is critical under *Calder* is that the defendants are claimed to have committed an intentional tort directed at Illinois residents. Under the circumstances, the particulars of who contacted whom, when, and how, are not of controlling significance.

Though the precise roles of Harman and Hale in the alleged interference with contract are not entirely clear on the record currently before the Court, there is a

reasonable basis for an inference that both were involved in one way or another in the alleged effort to undermine the Woods' relationship with the Stearney firm and establish a substitute relationship with attorney Schlyer. In short, a *prima facie* basis for assertion of personal jurisdiction exists for both individual defendants; the sufficiency of the plaintiffs' evidence to prove liability is a matter for a later stage of the litigation. Finally, because the individual defendants are alleged to have acted as agents of Awakenings Community Services, Inc. and Awakenings LLC, their actions also provide a sufficient basis for the Court to exercise jurisdiction over those entities.

**Conclusion**

The Court denies defendants' motion to dismiss for the reasons stated above [docket no. 78] and directs defendants to answer the amended complaint by no later than June 26, 2008.

_____
 MATTHEW F. KENNELLY
 United States District Judge

Date: June 11, 2008