30965/14680/RAB/LMS

Attorney #

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RONALD A. STEARNEY, SR. and RONALD A. STEARNEY, JR., ) | |
| Plaintiff, ) | |
| v. ) | No. 06 CV 6811 |
| ) | JUDGE MATTHEW F. KENNELLY |
| TERRY HARMON, PhD., et al., ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COMES defendant, TERRY HARMON, Ph.D., JESSICA HALE, AWAKENINGS, LLC, an Indiana Limited Liability Company, and AWAKENINGS COMMUNITY SERVICES, INC., an Indiana Non-Profit Corporation, by and through their attorneys, CASSIDAY SCHADE LLP, and pursuant to Federal Rule of Civil Procedure 50(a) move for judgment at the close of evidence in the trial of this matter. In support of their motion, Defendants state as follows:

### INTRODUCTION

Prior to the trial of this matter, Defendants filed a motion for summary judgment which was denied by this Court. Both parties have now presented all their witnesses and evidence and are prepared to present their closing arguments to the jury. However, Plaintiffs have fallen far short of their burden of proof in establishing that Defendants intentionally interfered with their prospective economic advantage. More specifically, they have failed to prove: 1) that they had a reasonable expectation of continuing their attorney-client relationship with the Woods family, 2) Defendants' knowledge of that expectancy, 3) purposeful and unjustifiable interference by the

Defendants that induced or caused a termination of their attorney-client relationship with the Woods, and 4) damages resulting from that interference. *Myers v. Levy*, 348 Ill. App. 3d 906, 921 (2d Dist. 2004). Furthermore, Defendants have successfully proven, by a preponderance of the evidence, that the "honest advice" privilege applies, and that they therefore cannot be held liable to plaintiffs.

## ARGUMENT

"Judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for a part on an issue." *Hall v. Forest River, Inc.*, 536 F.3d 615, 618 (7th Cir. 2008). A mere scintilla of evidence will not suffice. *Id.* Here, because the evidence so overwhelmingly favors the Defendants, judgment as a matter of law is appropriate.

**I. Plaintiffs have failed to establish the elements of their claim for intentional interference with prospective economic advantage.**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must establish: 1) a reasonable expectation of entering into a valid business relationship, 2) defendant's knowledge of that expectancy, 3) purposeful and unjustified interference by the defendant, 4) that induces or causes a termination of plaintiff's expectancy, and 5) damages to plaintiff resulting from that interference. *Myers v. Levy*, 348 Ill. App. 3d 906, 921 (2d Dist 2004). In this case, Plaintiffs have failed as to their burden of proof with respect to each of these five elements.

**A. Plaintiffs have failed to prove that they had a reasonable expectation of continuing their attorney-client relationship with the Woods.**

In order to state a claim for intentional interference with prospective economic advantage, Plaintiffs must first prove that they had a reasonable expectation of continuing their attorney-client relationship with the Woods family. *Myers v. Levy*, 348 Ill. App. 3d 906, 921 (2d Dist. 2004). Not only have Plaintiffs failed to offer any evidence showing that they had such an expectation, they have actually offered evidence that establishes the exact opposite. Ronald A. Stearney, Sr. acknowledged while testifying that his contract with the Woods was *terminable at will*, and that either he or the client could terminate it, without cause, at any time during the course of the representation. Plaintiffs cannot claim that they had a reasonable expectation of continuing their attorney-client relationship with the Woods while at the same time acknowledging that the relationship could have ended at any time and for any reason. To acknowledge that the relationship was terminable at will is to acknowledge that it would have been unreasonable to expect the relationship to continue indefinitely.

**B. Plaintiffs have failed to offer any evidence establishing that Defendants knew that they had an expectation of continuing their relationship with the Woods.**

Although Plaintiffs have not offered any evidence tending to show that they had a reasonable expectation of continuing their attorney-client relationship with the Woods, even if they had done so, they have nonetheless failed to demonstrate that Defendants had any knowledge of this expectancy. To the contrary, Jessica Hale testified that she did not know that the Woods had a contract with Plaintiffs. Along those same lines, Terry Harman testified, and Plaintiffs admitted, that he never even spoke with Plaintiffs prior to his deposition in this matter.

In order to state a claim for intentional interference with prospective economic advantage, Plaintiffs must prove that Defendants had knowledge of their business expectancy. *Myers v. Levy*, 348 Ill. App. 3d 906, 921. The only people who could possibly know whether Defendants had knowledge of Plaintiffs' expectancy are the Defendants themselves, and they both have testified that they had no such knowledge. As the only pertinent testimony in this case has unequivocally established that Defendants did not know anything about Plaintiffs' expectancy with regards to the Woods' case, the Plaintiffs have failed to establish the second element of their claim.

    **C.**    **Plaintiffs have failed to offer any evidence establishing purposeful and unjustifiable interference by the Defendants.**

To be purposeful, a defendant's actions must be wrongful, or "fraudulent, deceitful, intimidating or deliberately disparaging." *Hackman v. Dickerson Realtors*, 520 F.Supp.2d 954, 971 (N.D. Ill. 2007). Therefore, in order to establish their claim for intentional interference with prospective economic advantage, Plaintiffs must demonstrate that Defendants fraudulently, deceitfully, or somehow wrongfully interfered with their attorney-client relationship with the Woods. However, at best, Plaintiffs have offered nothing more than their own speculation regarding Defendants' intentions.

In *Dorsey v. Morgan Stanley*, the Seventh Circuit held that, "Inferences based on mere speculation [were] insufficient to overcome summary judgment." 507 F.3d 624, 628 (7th Cir. 2007). In *Dorsey*, plaintiff brought a claim against her former employer for retaliation, alleging that she was demoted as the result of her complaints regarding her direct supervisor. *Id.* The court noted that to prove her claim, plaintiff had to offer evidence showing that her supervisor

- 4 -

influenced the decision to demote her. *Id.* Plaintiff pointed to several facts as circumstantial evidence of her supervisor's role in the investigation, including, among other things, phone calls made to and by her supervisor shortly before her demotion. *Id.* at 628-629. Affirming summary judgment on behalf of the defendant, the court held that none of these pieces of circumstantial evidence was enough to implicate plaintiff's supervisor in her demotion. *Id.*

In the present case, Plaintiffs theory is that Terry Harman took offense to Plaintiffs' perception that he was not qualified to serve as an expert in the Woods v. Southwest matter, and that he and Jessica Hale somehow convinced the Woods to fire the Plaintiffs in retaliation for this perceived slight. During their case in chief, Plaintiffs relied heavily on Defendants' phone records, which show phone calls between Terry Harman and someone at Donald Schlyer's office the day after the Woods' accident, December 19, 2005, and February 6, 2006. Plaintiffs claim that these phone records indicate that Defendants and Donald Schlyer entered into an agreement whereby the Defendants would convince the Woods to fire the Plaintiffs and hire Donald Schlyer in exchange for a portion of any attorneys' fees he received in connection with the Woods matter.

Plaintiffs are free to speculate as to what Terry Harman spoke about with Donald Schlyer, but their speculation cannot and does not measure up to the testimony of Terry Harman, Jessica Hale, Leroy Woods, and Lisa Woods—all of whom testified that the Defendants did not influence Leroy and Lisa's decision to terminate the Plaintiffs. Furthermore, Terry Harman had absolutely no contact with Leroy or Lisa during the entire month of January or the first several days of February. Not one witness in this case has testified that the Defendants told the Woods

- 5 -

or even suggested to them that they should fire the Plaintiffs—not even the Plaintiffs themselves. As the uncontroverted testimony of Terry Harman, Jessica Hale, Leroy Woods and Lisa Woods establishes that the Defendants did not purposefully or unjustifiably interfere with Plaintiffs' attorney-client relationship with the Woods, judgment as a matter of law in favor of Defendants is appropriate.

**D.   Plaintiffs have failed to offer any evidence establishing that Defendants' actions caused the Woods to terminate their attorney-client relationship with Plaintiffs.**

To state a claim for intentional interference with prospective economic advantage, a plaintiff must establish purposeful and unjustified interference by the defendant that <u>induces or causes a termination of plaintiff's expectancy</u>. *Myers v. Levy*, 348 Ill. App. 3d 906, 921 (2d Dist 2004) (emphasis added). In their case in chief, Plaintiffs presented absolutely no evidence that Defendants' alleged actions caused the Woods to fire them. In fact, neither Ronald A. Stearney, Jr. nor Ronald A. Stearney, Sr. testified that they were fired because of any actions taken by the Defendants.

In this case, the only people who could and who did offer testimony regarding their reasons for firing the Plaintiffs were Leroy and Lisa Woods themselves, both of whom testified that they did not fire the Plaintiffs because of any actions taken by the Defendants. In fact, Leroy Woods testified that he fired the Plaintiffs over the phone two to three days <u>before</u> he was discharged from Gary Methodist Hospital (and hence, two or three days before Jessica gave him the names of attorneys). Furthermore, Leroy Woods testified that if Jessica had not given him the names of attorneys, he would have used the phone book and found another attorney on his

- 6 -

own. In addition, both Leroy and Lisa Woods testified that Leroy decided to fire the Plaintiffs when they tried to have him committed against his will and attempted to move his family out of state while he was still in the hospital. Finally, Don Schlyer testified that Leroy and Lisa Woods told him they had fired their previous attorneys because they were trying to have Leroy committed. Because the evidence so overwhelmingly establishes that the Woods terminated the Plaintiffs for their own reasons, and not because of any actions taken by the Defendants, Plaintiffs' claim for intentional interference with prospective economic advantage must fail.

**E.  Plaintiffs have failed to offer any evidence establishing that they have suffered damages as a result of Defendants' alleged interference.**

Both Plaintiffs have testified that, as a result of Defendants' conduct, they have been damaged in the amount of 2.9 million dollars, which is the amount Donald Schlyer received after the Woods' case settled. However, Illinois case law clearly states that when a client discharges an attorney who was hired on a contingent fee basis, the contract governing the relationship ceases to exist and the contingency term is no longer operative. *Storm & Associates v. Cuculich*, 298 Ill. App. 3d 1040, 1049 (1st Dist. 1998) Furthermore, the attorney's right to compensation for his services cannot be measured by the results obtained by another attorney. *Id.* at 1049-1050. As such, Plaintiffs cannot prove that they would have also obtained 2.9 million dollars had they been discharged.

**II.  Defendants have established that they only gave Leroy Woods the names of attorneys in response to his direct inquiry.**

Under Section 772 of the Restatement 2d of Torts, one who causes a third person not to enter into a prospective contractual relation with another does not interfere improperly with the

- 7 -

other's contractual relation by giving the third person honest advice within the scope of a request for the advice. One of the Court's proposed jury instructions in this matter states as follows:

> If you find that the plaintiffs proved each of these things by a preponderance of the evidence as to a particular defendant, then you must go on to consider whether the defendant proved the following by a preponderance of the evidence: The defendant gave Leroy Woods truthful information or honest advice that was within the scope of Leroy Woods' request for that advice. If you find that the defendant proved this by a preponderance of the evidence, then you must find for the defendant.

Jessica Hale, Leroy Woods and Lisa Woods have all testified that Jessica Hale gave Leroy Woods the names of attorneys <u>after</u> he specifically asked for them. So, even if the Plaintiffs had provided evidence indicating that Defendants purposefully interfered with their attorney-client relationship with the Woods, Defendants' actions would still be proper, as they were merely giving advice within the scope of a request for that advice. As such, Defendants cannot be held liable for intentional interference with Plaintiffs' prospective economic advantage, and judgment as a matter of law should be entered in Defendants' favor.

WHEREFORE, Defendants, TERRY HARMAN, Ph.D., JESSICA HALE, AWAKENINGS, LLC, an Indiana Limited Liability Company, and AWAKENINGS COMMUNITY SERVICES, INC., an Indiana Non-Profit Corporation, respectfully request that this Court grant their Motion for Judgment as a Matter of Law.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: s/ Richard A. Barrett, Jr.
Attorneys for Defendant(s), TERRY HARMAN, Ph.D., JESSICA HALE, AWAKENINGS, LLC, an Indiana Limited Liability Company, and AWAKENINGS COMMUNITY SERVICES, INC., an Indiana Non-Profit Corporation

Richard A. Barrett, Jr.
CASSIDAY SCHADE LLP
20 N. Wacker Ste. 1040
Chicago, IL 60606
Phone: (312) 641-3100
Fax: (312) 444-1669

7243975 KMNA;KMNA

- 9 -